**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**


SOUTH DALLAS WATER        :
AUTHORITY,

                             :

      Plaintiff,

                             :

vs.                            CA 10-0604-CG-C

                             :

THE GUARANTEE COMPANY OF
NORTH AMERICA, USA,        :

      Defendant.


## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), plaintiff's motion to remand (Doc. 4; *see also* Doc. 5) and motion to tax costs and expenses (Doc. 6), the response in opposition filed by defendant The Guarantee Company of North America USA (Doc. 14),[1] and plaintiff's reply (Doc. 21). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT** plaintiff's motion to remand and remand this action to the Circuit Court of Dallas County, Alabama.

## FINDINGS OF FACT

1.      Sometime in 2008, plaintiff awarded to W.D. Wainwright & Sons, Inc. ("Wainwright") a construction contract under which Wainwright "was obligated to install a water main and connecting water lines along various county roads to connect to the waste-water

---

[1]      Hereinafter, the removing party will be referred to as "The Guarantee Company."

treatment plant being constructed by . . . Cardinal Contracting, Inc." (Doc. 1, Exhibit A, COMPLAINT, at ¶ 8)[2] As required by the construction contract and bid request, Wainwright obtained and submitted to plaintiff a performance bond which obligated it (Wainwright) and its third-party surety, The Guarantee Company, to fulfill the construction contract "and pay any damages, costs, expenses, including attorneys' fees, and other sums due the Authority under the construction contract or arising from a breach thereof should Wainwright fail to timely perform the contract." (*Id*. at ¶ 9)

2.     Because Wainwright did not complete its work by the April 16, 2009 deadline, the South Dallas Water Authority's ("South Dallas") board of directors held a meeting with the officers of Wainwright on April 24, 2009 to discuss the corporation's breach of the construction contract. (*Id*. at ¶ 13) At the meeting, Wainwright requested an opportunity to complete the contract and by letter dated May 6, 2009, plaintiff notified Wainwright and The Guarantee Company that although it was granting Wainwright's request to complete the contract, it "***reserved its right to enforce the contract's liquidated damages provision, by which liquidated damages would accumulate from the date of the breach until the contract was completed***." (*Id.* (emphasis supplied))

> The Board of the South Dallas Water Authority recently met to act upon the recommendations of the United States Department of Agriculture regarding Wainwright's failure to complete the Water Main Improvements Construction Contract by the contractual deadline of April 16, 2009. The Board has taken the following actions, of which you and Wainwright are hereby notified:
>
> 1.     In reliance upon Wainwright's commitment and representations made to the Authority during the April 24, 2009 conference, Wainwright is to fully complete, carry-out and satisfy its duties and responsibilities under the Contract as soon as possible and without any further delay.

---

[2]     The construction contract placed Wainwright on notice that "'time was of the essence'" and that completion of all work was expected by April 16, 2009. (*Id*.)

2.      The Authority will enforce the Liquidates Damages provision contained in § 4.03 of the Contract, which imposes Liquidated Damages of $500 for each day after the time specified for the Contract's completion, i.e., April 16, 2009, until the Contract is completed.

3.      The Authority will make no further Progress Payments to Wainwright.

4.      Once Wainwright has completed, carried-out and fully satisfied its duties and responsibilities under the Contract, the Authority will make Final Payment to the order of Wainwright and Wainwright's guarantor, The Guarantee Company, to be mailed directly to The Guarantee Company. If Wainwright claims all or a portion of the funds comprising the Final Payment, Wainwright should seek satisfaction from The Guarantee Company.

(Doc. 1, Exhibit F (May 6, 2009 letter)[3])

3.      Upon subsequently being informed by Wainwright that it could not complete the contract until September 2, 2009, the Water Authority notified Wainwright and The Guarantee Company by letter dated August 17, 2009 that no additional delays would be acceptable and demanded completion of the work not later than September 2, 2009. (Doc. 1, Exhibit A, COMPLAINT, at ¶ 15) Wainwright not only did not complete its work by September 2, 2009 but, in addition, informed the Water Authority, on September 17, 2009, that it needed another month to complete the work. (*Id*. at ¶ 16) The next day, September 18, 2009, the Water Authority informed Wainwright by letter that it was terminated. (*Id*. at ¶ 17)

As I previously advised, the South Dallas Water Authority is extremely dissatisfied with W.D. Wainwright & Sons' performance of the Water Main Improvements Construction Contract. South Dallas's dissatisfaction has been expressed in numerous letters either addressed directly to you or to The Guarantee Company of North America or its attorney, Graves Stiff, with which you were copied. . . .

---

[3]      Counsel for plaintiff copied Wendy Drum of The Guarantee Company with this letter which was addressed to counsel for Wainwright, George P. Walthall, Jr., Esquire. (*Id*.)

Wainwright previously represented that it would complete its work by September 2, 2009. As you recall, the contract required Wainwright to complete its work by April 16, 2009. By my letter to you dated August 7, 2009, Wainwright was placed on notice that no further delays were acceptable or would be tolerated. It has been brought to my attention that substantial work remains to be completed and that Wainwright now claims it will take an additional month to complete the work . . . . This is totally unacceptable. Accordingly, Wainwright is hereby notified that it is terminated, effective today, by the South Dallas Water Authority for breach of contract.

.    .    .

South Dallas Water Authority has reserved, continues to reserve, and will exercise its contractual and legal rights with respect to the Water Main Improvements Construct[ion] Contract including, but not limited to, obtaining indemnity from Wainwright and its surety, The Guarantee Company of North America, for all costs and expenses the Authority has previously incurred or will incur for Wainwright's breach of contract.

(Doc. 1, Exhibit G (September 18, 2009 Letter)[4]) Three days later, on September 21, 2009, the

Water Authority notified The Guarantee Company of Wainwright's termination, demanded that

The Guarantee Company complete Wainwright's work, and informed The Guarantee Company

that "it would obtain and forward three proposals from other contractors to complete the work."

(Doc. 1, Exhibit A, COMPLAINT, at ¶ 17)

Pursuant to the Performance Bond . . . in favor of South Dallas Water Authority, you are hereby notified that the Authority has terminated W.D. Wainwright & Sons due to default/breach of contract for failure to complete the Water Main Improvements Construction Contract. . . .

Accordingly, the Authority hereby demands that The Guarantee Company of North America USA, at The Guarantee Company's expense, perform its duties and responsibilities and ensure the completion of the Water Main Improvements Construction Contract. The Authority will not consent to Wainwright completing the contract. In an effort to obtain an expedited completion of the contract, which is currently more than five (5) months behind schedule, the Authority will obtain

---

[4]    This letter was again addressed to counsel for Wainwright, Mr. Walthall. (*Id.*) However, plaintiff's counsel also copied Wendy Drum of The Guarantee Company and this defendant's attorney, Graves Stiff. (*Id.* at 2)

three proposals from qualified contractors and will submit the proposals to The Guarantee Company, along with the Authority's preference.

> ***The Guarantee Company is also hereby placed on notice that the Authority reserves any and all rights for costs, damages and expenses to which the Authority is entitled by contract and/or law including, but not limited to, liquidated damages as provided in the contract of $500 for each day that expires from the scheduled date of completion until the actual date of completion. For your information, as of today's date, the amount of liquidated damages currently due is approximately $79,000.00.***

(Doc. 1, Exhibit I, September 21, 2009 Letter[5] (emphasis supplied))

4.      Plaintiff provided The Guarantee Company with three proposals from other contractors during the week of September 28, 2009, as promised. (*See* Doc. 1, Exhibit A, COMPLAINT, at ¶ 18) The Water Authority recommended that Cardinal Contracting, Inc.'s proposal be accepted both because it was already constructing the water treatment plant and because it submitted the lowest of the three proposals. (*Id*.) Not long thereafter, the Water Authority demanded a status update from The Guarantee Company. (*Id*. at ¶ 19) By letter dated October 9, 2009, The Guarantee Company informed plaintiff that it was refusing "to perform its obligations as required by the Performance Bond." (*Id*.) Therefore, the Water Authority "engaged Cardinal to complete Wainwright's work at additional costs, expenses, and damages to the Authority." (*Id*. at ¶ 20) Moreover, "[i]n completing the work, numerous deficiencies were discovered in Wainwright's work, and the Authority was consequently forced to remedy such deficiencies at additional costs, expenses, and damages to the Authority." (*Id*.; *see also* Doc. 1, Exhibit H, December 19, 2009 Letter[6] ("I am writing to inform you that Cardinal has completed

---

[5]      This letter was addressed to The Guarantee Company's Wendy Drum. (*Id*.) A copy of the letter was sent to Graves Stiff, Esquire. (*Id*. at 2)

[6]      This letter was addressed to counsel for The Guarantee Company, Graves Stiff, Esquire. (*Id*.) This, however, was not the first correspondence between counsel for South Dallas, Flynn Mozingo, Esquire, and counsel for The Guarantee Company, Graves Stiff, III, Esquire. (Continued)

the Water Main Improvements Construction Contract. However, it has come to my attention that numerous deficiencies were found regarding the work previously performed by Wainwright. . . . It is my understanding that your client is or may be responsible for the warranty on Wainwright's work and, obviously, the deficiencies will need to be fully addressed by your client."))

5.      Plaintiff filed this breach of contract, misrepresentation and suppression action against Wainwright and its third-party surety, The Guarantee Company, in the Circuit Court of Dallas County, Alabama on April 16, 2010. (Doc. 1, Exhibit A, COMPLAINT) Other than as set forth above, the complaint reads as follows:

> 21.      Wainwright and The Guarantee Company have failed and refused to perform their duties and responsibilities under the construction contract and Performance Bond, and are in full breach thereof.

---

(*See* Doc. 21, Exhibits 5 & 6) As referenced in the complaint (Doc. 1, Exhibit A, COMPLAINT, at ¶ 15), Mozingo wrote to Stiff on August 17, 2009 and attached thereto a copy of his May 6, 2009 correspondence to Wendy Drum, an associate claims attorney with The Guarantee Company. (Doc. 21, Exhibit 6) In addition, Mozingo requested that Stiff assure The Guarantee Company that South Dallas was fully prepared to "vindicate its rights against any and all persons who are responsible for a breach of its contract." (*Id*. at 2)

> It is my understanding that almost 4,000 feet of line is left to be laid, as well as testing on all lines installed, and clean-up work. The remaining contract balance as of today is $79,578.27. However, assuming Wainwright's work is fully completed by the promised date of September 2, 2009, the Authority will deduct liquidates damages as authorized by the contract in an amount in excess of $68,000.

(*Id*. at 1) Thus, The Guarantee Company was placed on notice that the most plaintiff's final payment to Wainwright--sent directly to the surety--would be in the neighborhood of $12,000, assuming the contract was completed by September 2, 2009. (*Compare id. with* Doc. 1, Exhibit F)

In a letter dated September 23, 2009, Mozingo sent to Stiff a copy of the contract between South Dallas and Wainwright as well as a copy of all previous correspondence he had directed to The Guarantee Company. (Doc. 21, Exhibit 5, at 1) In addition, Mozingo informed Stiff that South Dallas reserved and maintained "any and all contractual and legal rights to which it is entitled." (*Id*.)

22.    As a proximate result thereof, the Authority has been, and continues to be, damaged by the Defendants' acts and omissions, and has incurred, and continues to incur, significant and additional costs and expenses.

CAUSES OF ACTION

COUNT I
BREACH OF CONTRACT

23.    The Authority restates and re-alleges each and every allegation contained in paragraphs 1 through 22 of the Complaint as set forth herein.

24.    A Performance Bond exists between the Authority and the Defendants whereby Defendants have agreed, jointly and severally, to bind themselves, their heirs, executors, administrators, successors, and assigns to the Authority for the performance of the Water Main Improvements Construction Contract, and to indemnify, reimburse and make whole the Authority for all damages, costs, and expenses incurred by the Authority in the event Wainwright failed to timely complete the contract.

25.    Defendants have breached the construction contract and the Performance Bond by refusing to complete the construction contract following Wainwright's breach thereof, and by further refusing to indemnify, reimburse, and make whole the Authority for all damages, costs, and expenses resulting from Wainwright's acts and omissions.

26.    As a proximate result thereof, the Authority has been, and continues to be, injured and damaged, and has incurred, and continues to incur, costs and expenses as a result thereof.

**WHEREFORE**, the Authority demands judgment against Defendants for ***damages in an amount necessary to fully compensate the Authority for the breach of the Performance Bond,*** and further demands judgment for attorneys' fees (as provided by Defendants' agreement), pre-judgment interest, interest, court costs, and such other and different relief to which the Authority may be entitled.

COUNT II
MISREPRESENTATION
(ALTERNATIVE COUNT)

27.    The Authority restates and re-alleges each and every allegation contained in paragraphs 1 through 26 of the Complaint as set forth herein.

28.     Defendants represented to the Authority that if the Authority employed Wainwright to perform the Water Main Improvements Construction Contract, then they would ensure that the contract was completed pursuant to the terms and conditions therein, and further represented to the Authority that they would reimburse, indemnify and make whole the Authority for any and all damages, injuries, costs, and expenses incurred by the Authority as a result thereof.

29.     The Authority relied on such representations and was induced by Defendants to award the Water Main Improvements Construction Contract to Defendant Wainwright.

30.     Defendant Wainwright subsequently failed and/or refused to timely complete the construction contract and the Defendants, jointly and severally, have refused to perform as previously represented and, likewise, have refused to indemnify Plaintiff for its damages, costs, and expenses incurred as a result of Wainwright's acts and omissions.

31.     The Authority has demanded that the Defendants make good on their representations to the Authority, but the Defendants have refused.

32.     As a proximate result thereof, the Authority has suffered injuries, damages, costs, and expenses for which Defendants are liable.

33.     The Defendants' misrepresentations were negligently, recklessly, willfully, wantonly, and/or intentionally made for the purpose of inducing the Authority to rely thereon, and the Authority did so rely to its detriment.

**WHEREFORE,** the Authority demands judgment against Defendants in such amount of ***compensatory and punitive damages*** as the Court may award, plus all costs, fees, interest, and expenses incurred by the Authority, including attorneys' fees.

<u>COUNT III</u>
<u>SUPPRESSION</u>
<u>(ALTERNATIVE COUNT)</u>

34.     The Authority restates and re-alleges each and every allegation contained in paragraphs 1 through 33 of the Complaint as set forth herein.

35.     Defendants had a duty to disclose and inform the Authority that the Performance Bond was being provided merely to obtain the award of the Water Main Improvements Construction Contract for Defendant Wainwright, but that otherwise Defendants had no intention of carrying out the representations made in such bond.

36.     The Authority detrimentally relied on the Defendants' non-disclosure of such material facts by awarding the construction contract to Wainwright, which Wainwright has failed and/or refused to perform, and Defendants have refused to fulfill their representations made in the Performance Bond.

37.     As a result of the Defendants' suppression, the Authority has acted to its detriment and, as a proximate result, been injured and damaged as alleged herein.

38.     The Defendants negligently, recklessly, willfully, wantonly, and/or intentionally failed to disclose such material facts to the Authority.

**WHEREFORE,** the Authority demands judgment against Defendants in such amount of ***compensatory and punitive damages*** as the Court may award, plus all costs, fees, interest, and expenses incurred by the Authority, including attorneys' fees.

(*Id*. at ¶¶ 21-38)

6.     Counsel for Wainwright filed a suggestion of bankruptcy in the Circuit Court of Dallas County, Alabama on June 10, 2010. (Doc. 1, Exhibit C) Therein, counsel for Wainwright suggested that the action had been stayed by operation of 11 U.S.C. § 362 since it had filed a petition for relief under Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Alabama and relief was ordered on December 23, 2009. (*Id*.) In addition, counsel for Wainwright disclaimed that the suggestion of bankruptcy constituted a notice of appearance and simply stated that the action was one "founded on a claim from which a discharge would be a release or that seeks to impose a charge on the property of the estate." (*Id*.)[7]

7.     The Guarantee Company answered plaintiff's complaint on June 25, 2010. (Doc. 1, Exhibit B) This defendant, who was served with the complaint on May 28, 2010 (*compare* Doc. 1, at ¶ 2 *with id.,* Exhibit A,  Copy of Domestic Return Receipt), did not remove this action

---

[7]     Wainwright's attorney served a copy of this pleading on plaintiff's counsel, J. Flynn Mozingo, Esquire. (*Id*.)

within thirty (30) days of its receipt of the complaint but, instead, removed it after receiving plaintiff's response to interrogatories and requests for production of documents (*compare* Doc. 1, at ¶¶ 5-9 *with id.* at ¶ 11). This action was removed to this Court on November 4, 2010 (Doc. 1) based upon The Guarantee Company's receipt of the just-mentioned "other" paper on October 5, 2010 and in accordance with the second paragraph of § 1446(b) (*see id.* at ¶¶ 6 & 11).

8. Plaintiff filed its motion to remand on December 3, 2010. (Doc. 4) Therein, plaintiff contends that this defendant waived its right to removal, the removal is untimely, diversity of citizenship is lacking, and The Guarantee Company has not carried its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. 4; *see also* Doc. 5) The Guarantee Company filed its response in opposition on December 27, 2010, and therein contends that none of plaintiff's arguments have merit. (Doc. 14) Thereafter, plaintiff filed its reply on January 10, 2011 contending, again, that The Guarantee Company had waived its right to removal, diversity of citizenship is lacking, and the removal was untimely such that this action should be remanded to the Circuit Court of Dallas County, Alabama. (*See* Doc. 21)

## CONCLUSIONS OF LAW

### A. Jurisdiction in General.

1. There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277,

157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Moreover, the removing defendants must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

2.     Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶ 10 ("Because complete diversity exists between the Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.")),[8] the removing party, The Guarantee Company, bears the burden of establishing complete diversity of citizenship, that is,

---

[8]     Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).

that the plaintiff is diverse from all the defendants, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

3.      As a threshold matter, the undersigned first considers whether complete diversity in this matter exists because if complete diversity is lacking, there is no need to address any of the other arguments set forth by plaintiff in its motion to remand.

**B.      <u>Whether Complete Diversity of Citizenship Exists.</u>**

4.      The removing party freely admits that Wainwright is an Alabama corporation with its principal place of business in Alabama, as is plaintiff South Dallas Water Authority. (Doc. 1, NOTICE OF REMOVAL, at ¶¶ 3 & 5) The issue would appear to be a lost cause for The Guarantee Company and doom this case to remand since it is clear that a district court "cannot exercise diversity jurisdiction if one of the plaintiffs shares the same citizenship as any one of the defendants[,]" *Corfield v. Dallas Glen Hills LP,* 355 F.3d 853, 857 (5th Cir. 2003) (citations omitted), *cert. denied*, 541 U.S. 1073, 124 S.Ct. 2421, 158 L.Ed.2d 983 (2004); *see also Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334, 1337 (11th Cir.) ("In order for federal diversity jurisdiction to exist, each defendant must be diverse from each plaintiff."), *cert. denied*, 537 U.S. 950, 123 S.Ct. 395, 154 L.Ed.2d 296 (2002), and a plethora of courts have held that "[w]henever federal jurisdiction in a removal case depends upon complete

diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998) (citations omitted); *see also Pullman Co. v. Jenkins,* 305 U.S. 534, 541, 59 S.Ct. 347, 350, 83 L.Ed. 334 (1939) ("[T]he rule is otherwise where a non-separable controversy involves a resident defendant. In that case the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant."); *Gibson v. Wal-Mart Stores East, LP,* 2010 WL 419393, *3 (M.D. Ga. Jan. 28, 2010) ("[D]iversity of citizenship subject matter jurisdiction is determined from looking at the residences of all the defendants, regardless of whether those parties have been served."); *Peek v. Nationwide Mutual Fire Ins. Co.,* 2007 WL 2284548, *3 (E.D. La. Aug. 7, 2007) ("As stated in *Deshotel*, a defendant cannot remove an action if the citizenship of any codefendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. As explained in *Gandy* and *Green*, the expiration of the time for service under state law is not a voluntary act by the Peeks sufficient to make this case removable to this Court."); *Triplett v. Johnson Controls, Inc.,* 2007 WL 603075, *2 (S.D. Miss. Feb. 21, 2007) (finding that the removing defendant had failed to heed the directive set out in *Deshotel* that "'[a defendant's] non-diverse citizenship cannot be ignored simply because he was an unserved [or untimely served] defendant.'"); *American Resources Ins. Co., Inc. v. The Evoleno Co., LLC,* 2007 WL 582116, *3 (S.D. Ala. Feb. 21, 2007) (citing *Deshotel* and finding that "[t]he remaining defendants must be 'counted' for jurisdictional purposes, and plaintiff's failure to serve them with process is jurisdictionally irrelevant."); *Cope v. American International Group, Inc.,* 2006 WL 317238, *4 (M.D. Ala. Feb. 9, 2006) ("The majority rule is that '[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is

determined from the fact of citizenship of the parties named and not from the fact of service.'"); *see Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1983) ("Removability should be determined 'according to the plaintiff's pleading at the time of the petition for removal.' On a motion to remand, the removing party bears the burden of proof on the issue of diversity. As of the filing of the removal petition, Coker's complaint did not allege a controversy between diverse parties. Coker had alleged causes of action against fictitious resident defendants on the face of his complaint. Amoco's subsequent motion to strike these defendants affected the pleadings after the time of removal and therefore must be disregarded in determining removability. Unserved resident fictitious defendants may not be ignored on removal if the complaint's allegations are directed at all defendants jointly without elaboration as to the particular role of any one defendant. We therefore conclude that Coker's action was not removable on the face of the pleadings." (internal citations omitted)).

5.      Despite the foregoing, The Guarantee Company cogently argues in its removal petition that since this action was automatically stayed as to Wainwright, "complete diversity exists as between the Plaintiff and the only Defendant as to whom this action is pending." (*Id*. at ¶ 5)[9]   After plaintiff cited to bankruptcy cases in its motion to remand essentially consistent with *Pullman* and its progeny, *see, e.g., Stewart v. A.G. Edwards & Sons, Inc.,* 74 B.R. 26, 27 (D. S.C. 1987) ("Removal in this action is improper because diversity of citizenship does not exist. While Meadows' bankruptcy petition operates as a stay of the 'commencement or continuation . . . of a judicial . . . action or proceeding against the debtor,' 11 U.S.C. § 362(a), it is not tantamount to a dismissal of Meadows as a party defendant in this action but merely suspends the proceedings.

---

[9]      This Court has also stayed this action as to Wainwright. (Doc. 16 ("Pursuant to 11 U.S.C. § 362, the filing of a bankruptcy petition operates as a stay of an action."))

The stay continues in effect only until one of the events specified in the Bankruptcy Act occurs. Where diversity does not exist among the parties at the commencement of the state court action, it can be tested again at the time of removal only if the removal is premised on actions by the plaintiff amounting to a voluntary dismissal of the nondiverse defendant. Because the Court finds that Meadows' bankruptcy petition does not operate as a dismissal, however, we do not reach the issue of whether the dismissal must amount to a voluntary dismissal by the plaintiff as required by *Whitcomb v. Smithson,* 175 U.S. 635, 20 S.Ct. 248, 44 L.Ed. 303 (1900). Accordingly, this action is remanded to the Court of Common Pleas, County of Richland, State of South Carolina." (some internal citations omitted)), the removing party distinguished those cases on the basis that the bankruptcy petitions in those cases were filed after the state-court actions (Doc. 14, at 2-3). Although the removing defendant did not cite this Court to any case law to guide the Court's decision on this issue, it argues that it "is the only defendant whose citizenship should be relevant to this inquiry[]" and that "[p]laintiff should not be allowed to avoid the jurisdiction of this Court by simply including in the Complaint a non-diverse defendant who had filed for bankruptcy months prior to the commencement of this action." (*Id*. at 3) In reply, plaintiff notes that at the time it filed suit it was "unaware that Wainwright & Sons had filed for bankruptcy because it never received notice prior to the filing of the Suggestion of Bankruptcy," (Doc. 21, at 13) but states that it "intends to pursue its claims against Wainwright & Sons once the stay is lifted." (*Id*. at 14) Accordingly, South Dallas argues that Wainwright is a proper defendant such that diversity does not exist and in support of its argument for remand cites to several cases that address the impact of a defendant's bankruptcy petition on the jurisdictional analysis. *See, e.g., Reichley v. Abercrombie & Fitch Stores, Inc.,* 2009 WL 5196140, *1 & *2 (W.D. Mich. Dec. 22, 2009) ("[T]he barrier to removal created by the existence of a non-diverse party can be remedied

only when dismissal of the non-diverse party is certain and final. Courts in this circuit have acknowledged that an 'administrative closing' of a case does not amount to a certain and final dismissal. . . . Properly understood, an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository. . . . Not only did Judge Giddings label the status of Plaintiffs' case against Defendant Dietzel an administrative closing, but the First Circuit's description of an administrative closing suggests the appropriateness of that label given the nature of the automatic stay. Though Plaintiffs' case against Defendant Dietzel is 'likely to remain moribund for an appreciable period of time,' at least until 'the circumstances that sparked the closing abate,' it has certainly not been finally adjudicated, as it might resume when Defendant Dietzel emerges from bankruptcy protection. Indeed, if this Court did exercise diversity jurisdiction over this matter, and if Defendant Dietzel did emerge from bankruptcy protection without Plaintiffs' claims against him having been discharged and prior to the full and final resolution of the claims against Defendant Abercrombie, complete diversity would then be destroyed, depriving this Court of subject matter jurisdiction midstream. Deference for state court jurisdiction requires that a case against a non-diverse party be fully and finally dismissed, and not merely temporarily closed pursuant to the automatic stay imposed by the filing of a bankruptcy petition, before federal diversity jurisdiction may be exercised." (internal citations omitted)); *Sutton Woodworking Machine Co., Inc. v. Mereen-Johnson Machine Co.,* 328 F.Supp.2d 601, 604 & 605 (M.D. N.C. 2004) ("Mereen-Johnson does not dispute that Plaintiffs and Group Seven qualify as citizens of North Carolina for jurisdictional purposes. Instead, Mereen-Johnson contends that 'there is diversity of citizenship among the real and substantial parties to this action . . . because the record demonstrates that [Group Seven] is a nominal and

formal party that the plaintiffs have improvidently joined and maintained in this action in order to defeat the exercise of federal jurisdiction.' According to Mereen-Johnson, the court should disregard Group Seven's citizenship because 'Group Seven's bankruptcy combined with Plaintiffs' assertions that Mereen-Johnson is fully responsible for any and all of the perceived misdeeds of Group Seven [leads to] one conclusion: Group Seven has become a formal and nominal party whose continued presence in this matter constitutes an improvident-or "fraudulent"-joinder.' . . . Neither the facts stated in the parties' briefs nor the record as a whole, including Mereen-Johnson's notice of removal, support Mereen-Johnson's contention that Group Seven is not a real party in interest to this civil action for purposes of diversity jurisdiction. Mereen-Johnson contends that Group Seven's Chapter 7 petition for bankruptcy and the factual allegations contained in paragraph five of Plaintiffs' amended complaint transformed Group Seven into a nominal or formal party after October 29, 2003; however, Group Seven's Chapter 7 petition for bankruptcy, without more, does not create diversity of citizenship or otherwise permit removal on the basis of diversity of citizenship. The automatic stay triggered by Group Seven's Chapter 7 petition for bankruptcy is not tantamount to a dismissal of Group Seven from the case, and merely suspends the proceedings pending against Group Seven."). If The Guarantee Company could file a response to plaintiff's reply it would no doubt contend that the cases cited by South Dallas in this portion of its reply are, as well, distinguishable from the instant case since in each the bankruptcy petitions were filed by the non-diverse defendant after the action was initiated in state court. *Reichley, supra,* at *1 ("On July 8, 2009, Plaintiffs, both Michigan residents, filed an action [in] the Ingham County Circuit Court against Defendants Abercrombie and Fitch Stores, Inc. [], an Ohio Corporation with its principal place of business in Ohio, and Andrew Dietzel, an individual residing in Michigan. Plaintiffs alleged a variety of claims arising

under state law. On July 28, 2009, Defendant Dietzel filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Western District of Michigan."); *Sutton Woodworking Machine Co., Inc., supra,* 328 F.Supp.2d at 602 & 603 ("On January 28, 2003, Plaintiffs filed this civil action against Defendants in the General Court of Justice, Superior Court Division, Guilford County, North Carolina. . . . Between January 2003 and October 2003, Plaintiffs and Defendants engaged in pretrial discovery. On October 29, 2003, Group Seven filed a Chapter 7 petition for bankruptcy in the United States Bankruptcy Court for the Western District of North Carolina."); *see also McDowell Welding & Pipefitting, Inc. v. United States Gypsum Co.,* 285 B.R. 460, 464 (D. Oregon 2002) ("McDowell filed this action in Columbia County on May 11, 2001. McDowell alleged three claims for relief at that time: an action for construction lien foreclosure against Defendants United States Gypsum (USG), the Port of St. Helens (Port), and the since-dismissed EC Company; a breach of contract claim against BE & K; and a *quantum meruit* claim against BE & K and USG. On June 25, 2001, USG filed a voluntary bankruptcy petition pursuant to Title 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware. On July 16, 2001, McDowell filed an Amended Complaint in the Columbia County action in which it voluntarily dismissed EC Company and acknowledged the automatic stay provided by the Bankruptcy Code prohibited it from pursuing its claims against USG."). While it is often the case that distinctions between cases make no difference with respect to a Court's analysis of a particular issue, that is not the case here. Stated differently, the fact that Wainwright filed its Chapter 11 bankruptcy petition before South Dallas filed this action is a distinction that makes a difference because it renders inapplicable and non-precedential all cases cited by plaintiff since in all of those cases the bankruptcy petition filed by the non-diverse defendant was, as aforesaid, filed after initiation of the state-court action. This is because, as touched upon

by the removing defendant (*see* Doc. 14, at 3 ("Plaintiff should not be allowed to avoid the jurisdiction of this Court by simply including in the Complaint a non-diverse defendant who had filed for bankruptcy months prior to the commencement of this action.")), the action by the plaintiff in filing suit against Wainwright in the Circuit Court of Dallas County, Alabama **after** Wainwright filed a Chapter 11 petition in bankruptcy court was *void ab initio*[10] and without effect, *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) ("A debtor who has filed for Chapter 11 bankruptcy enjoys an automatic stay against actions to enforce, collect, assess or recover claims against the debtor or against property of the estate. It is the law in this Circuit that actions taken in violation of the automatic stay are void and without effect." (internal citations, quotation marks, and brackets omitted)); *see In re State Airlines, Inc.,* 873 F.2d 264, 265 n.1 (11th Cir. 1989) ("Because this appeal involves the effect of the § 362(a) automatic stay, we note out of scrupulous regard for detail that even the initiation of a lawsuit against the debtor is prohibited by the automatic stay. Quinn should have sought the permission of the bankruptcy court before commencing the action against the debtor."), even though South Dallas did not have notice of Wainwright's bankruptcy at the time it initiated this action in state court, *compare In re Miller*, 2007 WL 656556, *1 (Bankr. S.D. Fla. Feb. 27, 2007) ("The commencement of a bankruptcy case triggers the automatic stay of 11 U.S.C. § 362, which is good against the world regardless of whether the party had notice of the stay or the bankruptcy filing. . . . Even actions taken without notice of the bankruptcy are void ab initio.") *with In re Peralta,* 317 B.R. 381, 389 (9th Cir. 2004) ("Since the automatic stay is effective against the world, regardless of notice, acts in violation of the stay are automatically void ab initio."). Indeed, as recognized in *In re Miller,*

---

[10]      *Void ab initio* means "[n]ull from the beginning[.]" BLACK'S LAW DICTIONARY, at 1604 (8th ed. 2004).

*supra,* "[i]f a creditor acts without knowledge of the bankruptcy in violation of the automatic stay it must affirmatively act immediately to restore the pre-violation status quo." *Id.* at *1 (citations omitted).

6.     In light of the foregoing, the undersigned recommends that this Court find that plaintiff's action in filing suit against Wainwright violated the automatic stay (albeit, unintentionally) and was, therefore, *void ab initio* and without effect, *United States v. White, supra,* such that the citizenship of Wainwright need not be considered in determining whether this Court may exercise diversity jurisdiction, *see In re Miller, supra.*[11] Accordingly, because

---

[11]     Stated differently, to the extent it is necessary, plaintiff's violation of the automatic stay creates a situation whereby there is no possibility that South Dallas can establish the claims it asserts against Wainwright in state court; therefore, pursuant to the fraudulent joinder doctrine, Wainwright is due to be dismissed from this action. *Compare Capparelli v. Amerifirst Home Improvement Finance Co.*, 535 F.Supp.2d 554, 560 & 560-561 (E.D. N.C. 2008) ("Because plaintiffs have filed an adversary proceeding against Lanier in U.S. Bankruptcy Court regarding the same transaction, alleged fraud, and resulting debt, they are precluded from filing essentially the same claim against Lanier's corporate alter ego, Tropical Pools, in state court. Upon the filing of a petition under Chapter 7 in U.S. Bankruptcy Court, an automatic stay is entered that requires all collection proceedings to stop. Prohibited actions under the automatic stay include the commencement of a judicial action against the debtor to recover a claim that arose before the commencement of the Chapter 7 action. . . . By naming Tropical Pools as a defendant in this case, plaintiffs essentially filed a claim against the Lanier bankruptcy estate and violated the automatic stay entered in Lanier's Chapter 7 bankruptcy action. The automatic stay prohibits any proceeding that attempts to collect debts that Lanier (or his alter ego Tropical Pools) incurred and owed before his Chapter 7 filing. Thus, there is no possibility that plaintiffs can establish the three claims against defendant Tropical Pools in state court.  Plaintiffs filed an adversary proceeding against Lanier, which extends to his alter ego Tropical Pools, in an attempt to recover for the alleged wrongdoing. Plaintiffs fail to allege a new legal theory for recovery against Tropical Pools. Accordingly, pursuant to the fraudulent joinder doctrine, the court dismisses non-diverse defendant Tropical Pools from the action without prejudice." (emphasis supplied; internal citations omitted)) *with Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) ("A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: '(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'"). The undersigned is somewhat remiss to make this alternative statement because it suggests that Wainwright is properly viewed as a defendant in this action and there is a need to dismiss it from the action. However, that is simply
(Continued)

complete diversity of citizenship exists between South Dallas and The Guarantee Company, the undersigned turns his attention to the only other real issue on which plaintiff and The Guarantee Company are at odds and that is whether this action was timely removed from state court.

**C.      Whether this Action was Timely Removed—The First and Second Paragraphs of 28 U.S.C.§ 1446(b).**

7.      The procedure for removal of a civil action is governed by § 1446(b) which generally provides, in its first paragraph, that the notice of removal must be filed within 30 days after service of the initial pleading "setting forth the claim for relief" but also provides, in its second paragraph, that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]" 28 U.S.C. § 1446(b). Therefore, "the statutory framework provides for a two-pronged analysis for removal, to-wit: '[I]f the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant. . . . [I]f the case stated by the initial pleading is not removable, then notice of removal must be filed within thirty days from the receipt of . . . other paper from which the defendant can ascertain that the case is removable.'" *Holloway v. Morrow*, 2008 WL 401305, *2 (S.D. Ala. Feb. 11, 2008), quoting *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 161 (5th Cir. 1992). The time limit set forth in § 1446(b) "'is mandatory and must be strictly applied.'" *Id.,* quoting *Clingan v. Celtic Life Ins.*

_____

not the case; rather, as aforesaid, the action in suing Wainwright was void and without effect and this is the sole basis for suggesting, under this alternative theory, that plaintiff could not establish a cause of action against Wainwright such that it must be dismissed from this action.

*Co.,* 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003). In addition, it is clear that "the 30-day removal period prescribed by § 1446(b) commences running as soon as a defendant is able to ascertain intelligently that the action is removable." *Id.* at *3 (citations omitted); *see also Clingan, supra,* 244 F.Supp.2d at 1302 ("[T]he 'plain purpose of [the] language [of 28 U.S.C. § 1446(b)] "is to permit the removal period to begin only after the defendant is able to ascertain intelligently that the requisites of removability are present."'"); *Moore v. Allstate Indemnity Co.,* 2006 WL 2730743, *4 (S.D. Ala. Sept. 22, 2006) ("The defendants were not required to remove based solely on the complaint unless they 'could have intelligently ascertained that the action was removable' before receiving the plaintiff's discovery response.").

8.     In *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744 (2010),[12] a panel of the Eleventh Circuit reiterated the need for promptness[13] in removal under both paragraphs of § 1446(b) and explained that the road offered for defendants in the second paragraph is not an easy one to travel particularly since the word "ascertained" in that paragraph is much different from the language contained in the first paragraph. *See id.* at 760.

> "Setting forth," the key language of the first paragraph, encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph. To "set forth" means to "publish" or "to give an account or statement of." "Ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty." The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

---

[12]     *Pretka* was decided on June 8, 2010 and, therefore, could have been relied upon by The Guarantee Company to remove this action under the first paragraph of § 1446(b) inasmuch as the removing defendant was served with a copy of the summons and complaint on May 28, 2010 (Doc. 1, ¶ 2)

[13]     Timeliness "is not a jurisdictional issue." *Id.* at 751 (citations omitted); *see also In re Uniroyal Goodrich Tire Co.,* 104 F.3d 322, 324 (11th Cir. 1997) ("The untimeliness of a removal is a procedural, instead of a jurisdictional, defect.").

*Id*., quoting *Bosky v. Kroger Tex., LP,* 288 F.3d 208, 211 (5th Cir. 2002). This language is important not only because it indicates a partial misuse of the word "ascertain" in *Hollaway, Clingan*, and *Moore, supra,* but also because, as noted in *Pretka,* it is a reminder to district courts that the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section. *See id.* This is, in turn, not only because the first paragraph of § 1446(b) does not "restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal[,]" *id.* at 771; *see also id.* at 759 (a removing defendant can offer its "own affidavits or other evidence to establish federal removal jurisdiction[,]"); *id.* at 755 & 756 ("The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation-provided of course that removal is procedurally proper. . . . The other circuit courts of appeal that have addressed the issue agree with our circuit law that defendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal. . . . No court of appeals decision we could find holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can."); *id.* at 761 ("*Lowery's* 'receipt from the plaintiff' rule has no application to cases, like this one, which are removed under the *first* paragraph of § 1446(b)."), but, as well, because "the use of deduction, inference, or other extrapolation of the amount in controversy is [not] impermissible," *id.* at 753; *see also id.* ("A different question is presented [] when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star

gazing."); *id.* at 770 ("It is true that '[n]othing in *Lowery* says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount.' . . . And viewing facts through the lens of common sense is not star gazing."), and "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id*. at 754; *see also id*. ("The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life.").

9.     With these principles in mind, the undersigned considers and finds compelling plaintiff's argument that The Guarantee Company untimely removed this case to this Court because it did not remove the case within 30 days of service of the summons and complaint, that is, on or before June 28, 2010. The undersigned recommends that the Court remand this case to the Dallas County Circuit Court based on the untimely removal by the defendant inasmuch as it is the undersigned's determination that The Guarantee Company could have intelligently determined that this case was removable within thirty days of service of the summons and complaint.

10.     In reaching this determination, the undersigned considers the evidence The Guarantee Company had in its possession and which it could have provided the Court on or before June 28, 2010 to establish by a preponderance of the evidence that the amount in controversy in this case more likely than not exceeds $75,000, exclusive of interest and costs. Of course, the defendant had the complaint and attached to the complaint was the Performance Bond. While defendant is correct that the complaint did not specifically make a demand for liquidated damages in the ad damnum clause of its breach of contract count, the undersigned cannot chastise plaintiff for opting to use the more general language that it demanded damages in

an amount to compensate it for "breach of the Performance Bond" instead since plaintiff had placed the defendant on notice that it was not only seeking liquidated damages but, as well, other damages to make it whole, including the costs and expenses it incurred in getting another contractor to complete Wainwright's work and to cure deficiencies in Wainwright's work (*compare* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 23-26 *with id.* at ¶¶ 9-22).[14] The Performance Bond, attached to plaintiff's complaint, incorporated into its provisions the Contract entered into by South Dallas and Wainwright and prominently provides that The Guarantee Company would be obligated for certain damages and costs, including liquidated damages specified in the Contract and "[t]he responsibilities of Contractor for correction of defective Work and completion of the Contract[.]" (Exhibit 1 Attached to State-Court Complaint)[15] The Contract, in

---

[14]     Numerous letters sent directly to The Guarantee Company and/or its attorneys, or with respect to which the defendant was copied, placed the removing defendant on notice that plaintiff would seek to recover from it liquidated damages for breach of the performance bond. (Doc. 1, Exhibits F & I; *see also* Doc. 21, Exhibit 6)

[15]     In addition, the Performance Bond specifically provides that if there was no owner default, the surety's obligations under the bond would arise after:

2.1     Owner has notified Contractor and Surety, at the addresses described in Paragraph 9 below, that Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with Contractor and Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract. If Owner, Contractor, and Surety agree, Contractor shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive Owner's right, if any, subsequently to declare a Contractor Default; and

2.2     Owner has declared a Contractor Default and formally terminated Contractor's right to complete the Contract. Such Contractor Default shall not be declared earlier than 20 days after Contractor and Surety have received notice as provided in Paragraph 2.1; and

2.3     Owner has agreed to pay the Balance of the Contract Price to:

1.     Surety in accordance with the terms of the Contract; or

(Continued)

turn, which The Guarantee Company had in its possession not later than late September of 2009 (*see* Doc. 21, Exhibit 5), provides for the assessment of $500 in liquidated damages for each day expiring after the date provided by contract for substantial completion (Doc. 21, Exhibit 2). The Guarantee Company knew well before the filing of the instant action that the deadline for substantial completion was April 16, 2009 (*see* Doc. 21, Exhibit 6) and that the contractor retained by plaintiff to complete Wainwright's obligations under the Contract (Cardinal) substantially did so by December 19, 2009 (*see* Doc. 1, Exhibit H). In addition, the removing party knew by December 19, 2009 that South Dallas was also holding it responsible for certain deficiencies in the work previously performed by Wainwright that Cardinal had to correct. (*See id.*) Finally, while The Guarantee Company knew that the remaining contract balance as of August 17, 2009 was $79,578.27 (Doc. 21, Exhibit 6) and that such amount could be used as an offset against the daily-accruing liquidated damages provided Wainwright finished its work by the promised date of September 2, 2009 (*id.*),[16] it also knew that Wainwright was fired as of September 18, 2009 with a substantial amount of work remaining to be completed such that Wainwright would not be entitled to much (if any) of an offset since plaintiff had to pay the

---

2.      Another contractor selected pursuant to Paragraph 3.3 to perform the Contract.

(Doc. 1, Exhibit A, PERFORMANCE BOND, at 2)

[16]      The Guarantee Company knew that in no event was plaintiff going to remit any of the remaining contract balance to Wainwright, whether in the form of progress payments or final payment, but, instead, would only make final payment to the order of Wainwright and The Guarantee Company and mailed to the surety provided the contract was fully and finally completed by Wainwright.

contractor who finished Wainwright's work under the contract and cured the numerous deficiencies in Wainwright's work (*compare id. with* Doc. 1, Exhibits H & I).[17]

11.     In light of and based upon the foregoing, The Guarantee Company could have made on or before June 28, 2010, that is, within thirty (30) days of service of the summons and complaint, the "simple mathematical calculation" it makes in the removal petition it filed on November 4, 2010 that plaintiff was seeking from it liquidated damages totaling $120,000. In other words, the removing party was well aware when the complaint was filed that plaintiff was seeking to recover "all damages" due it for breach of the Performance Bond, a major component of which was liquidated damages, and it had all the evidence it cites to regarding calculation of liquidated damages well before the complaint was filed (*see* Doc. 1, at ¶ 8); therefore, it could have simply attached this evidence to a properly-filed removal petition on or before June 28, 2010[18] to establish that plaintiff was seeking from it liquidated damages totaling $120,000. Moreover, while the defendant correctly points out that well over $70,000 remained on Wainwright's contract at the time of the contractor's termination, which could have been used to offset any assessment of liquidated damages (*compare* Doc. 1, ¶ 9 *with* Doc. 21, Exhibit 6), it also knew well before the complaint was filed that plaintiff had taken the position that Wainwright was not entitled to any more money and, instead, had used the remaining contract balance to pay Cardinal[19] not only for the substantial amount of work left to be done on the

---

[17]     The Guarantee Company knew the amount of Cardinal's bid proposal to complete the contract. (*See* Doc. 1, Exhibit A, COMPLAINT, at ¶ 18)

[18]     Under *Pretka* the defendant could have attached directly to the removal petition plaintiff's various letters to it, as well as the contract provisions, but even if it was hesitant to do this it could have appended these documents to an appropriate affidavit.

[19]     Again, The Guarantee Company was well aware of the amount of Cardinal's proposal for completion of the contract.

contract but, as well, for correction of the deficiencies in Wainwright's work.[20]    Thus, The

Guarantee Company could have and should have intelligently determined that the case stated by

the complaint was removable and traveled the broader access provided by the first paragraph of

§ 1446(b) to bring this case into this Court on or before June 28, 2010. Stated differently, The

Guarantee Company could have marshaled enough evidence of the jurisdictional facts to support

a notice of removal within thirty days of receiving the initial complaint[21] such that its failure to

---

[20]    All the removing defendant needed to do at this point in time was refer to the language of the Performance Bond (Doc. 1, Exhibit A, PERFORMANCE BOND, at ¶ 2.3 (providing that where there is no owner default, surety's obligation under the bond would arise after a number of conditions precedent including that the owner had agreed to pay the balance of the contract price to another contractor selected pursuant to Paragraph 3.3 to perform the Contract)), use the plaintiff's own words that a substantial amount of work was completed by another contractor (including the curing of deficiencies in Wainwright's work), Cardinal, following Wainwright's termination, and cite to plaintiff's refusal to remit directly to Wainwright any more money under the contract, whether as progress payment or final payment, in order to allow this Court to use its judicial experience and common sense to determine that the case stated in the complaint meets federal jurisdictional requirements under the first paragraph of § 1446(b), *see Pretka, supra,* 608 F.3d at 770, particularly in light of *Pretka's* teaching that "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* at 754 (citations omitted). In other words, such reasonable deductions and inferences would not have been akin to conjecture, speculation or star gazing. *Id.* at 754.

[21]    That The Guarantee Company could have established the jurisdictional threshold within thirty days of the filing of the complaint is even more apparent when one considers plaintiff's demand for compensatory and punitive damages in Counts II and III of the complaint (Doc. 1, Exhibit A, COMPLAINT, at 11 & 12). *Compare Holley Equipment Co. v. Credit Alliance Corp.,* 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered.") *with Board of Water & Sewer Commissioners of City of Mobile v. Bill Harbert Constr. Co.,* 27 So.3d 1223 (Ala. 2009) (Board asserted fraud counterclaims against contractor and its surety) and *Griggs v. Finley*, 565 So.2d 154, 162 (Ala. 1990) ("[I]f the misrepresentation is shown to have been made with knowledge that it is false, then the law permits punitive damages by way of punishment.").

do so need necessitate a finding by this Court that the instant removal petition was untimely filed.[22]

### D. **Plaintiff's Motion to Tax Costs and Expenses (Doc. 6)**.

12.    Plaintiff has moved, pursuant to 28 U.S.C. § 1447(c), for an award of "costs and actual expenses, including attorney's fees," incurred by it "in preparing, filing, and prosecuting its Motion to Remand." (Doc. 6)   Section 1447(c) does indeed provide that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The decision to award costs and fees in accordance with § 1447(c) is, of course, within this Court's sole discretion, *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005); *see also Bauknight v. Monroe County, Florida,* 446 F.3d 1327, 1329 (11th Cir. 2006) ("The denial of costs and fees under 28 U.S.C. § 1447(c) is reviewed for abuse of discretion."), and such an award is appropriate "only where the removing party lacked an objectively

---

[22]    The undersigned **REJECTS** all other arguments made by plaintiff in support of remand of this action which it has not already withdrawn. The undersigned would note that he regards plaintiff as having withdrawn the argument that The Guarantee Company failed to timely remove this action within 30 days of its receipt of "other paper" (*compare* Doc. 5, at 8-10 *with* Doc. 21 (no mention of this argument)) as well as its argument that the removing defendant failed to establish that the amount in controversy exceeds $75,000 (*compare* Doc. 5, at 17-19 *with* Doc. 21 (no mention of this argument)). Otherwise, the undersigned agrees with The Guarantee Company that it did not waive its right to removal, as argued by plaintiff (Doc. 5, at 19-21; *see also* Doc. 21, at 12), inasmuch as the forum selection clause at issue (*see* Doc. 1, Exhibit A, PERFORMANCE BOND, at 3 ("Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the Work or part of the Work is located . . . .")) is "clearly limited to issues regarding venue or in personam jurisdiction, and does not encompass the statutory right to remove." *Global Satellite Communication Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1273 (11th Cir. 2004). Finally, to the extent South Dallas continues to maintain that the removal was deficient due to The Guarantee Company's failure to obtain the consent of Wainwright (*see* Doc. 5, at 16), the undersigned finds that argument unacceptable given that plaintiff's action in suing Wainwright in the state court in the first place, as aforesaid, was *void ab initio*.

reasonable basis for seeking removal[,]" *Martin, supra.* The Magistrate Judge recommends that the Court find that The Guarantee Company had an objectively reasonable basis for removing this case to federal court, particularly in light of the ever-changing removal landscape in this circuit, *compare Pretka, supra with Lowery v. Alabama Power Co.,* 483 F.3d 1184 (11th Cir. 2007), *cert. denied sub nom. Hanna Steel Corp. v. Lowery*, 553 U.S. 1080, 128 S.Ct. 2877, 171 L.Ed.2d 812 (2008), and **DENY** plaintiff's motion to tax costs and expenses (Doc. 6).

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that plaintiff's motion to remand (Doc. 4) be **GRANTED** and that this action be **REMANDED** to the Circuit Court of Dallas County, Alabama. It is further **RECOMMENDED** that plaintiff's motion to tax costs and expenses (Doc. 6) be **DENIED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 25th day of January, 2011.

     s/WILLIAM E. CASSADY                  
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[23] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[23]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).